# CIRCUIT COURT OF HENRICO COUNTY

In re Custody of
Virginia Baxter,
an infant

August 24, 2007

By Judge Catherine C. Hammond

This matter is before the Court on Talmadge Baxter's appeal of two cases from the Juvenile and Domestic Relations District Court ("JDR Court"). One is a judgment finding him in violation of an Order, after a rule to show cause (CL07-499). The other is a judgment finding that he committed abuse and neglect, removing his daughter from his custody and placing her in the custody in the Department of Social Services (DSS) with a foster care plan. This Court heard the evidence on August 13, 2007. Fifteen witnesses testified. There follow my findings of fact and conclusions of law.

The evidence showed that the child, Virginia Baxter, lived with her father and not her mother from infancy until she was twelve years old. She is now fifteen. In February of 2005, her life with her father was disrupted suddenly when he was incarcerated. He was in jail from February until October 2005 but he was never convicted of the offenses for which he was jailed. By October 2005, Virginia had gone from her mother's home, which proved to be unsuitable, to live with her maternal grandparents, the Atkins. Mr. Baxter wanted to regain custody.

In December 2005, Virginia began therapy with Patricia White. Virginia and her father met together with Ms. White twice in July 2006. Virginia exhibited discomfort with her father because of his temper. Mr. Baxter did not show an understanding of Virginia's needs. He questioned the government's role in the situation. (PX 4.)

In October 2006, Virginia was attending Goochland High School and living with the Atkins. Virginia testified that she did not get along with the kids at school. She also had conflicts with the Atkins. Mr. Atkins abused

alcohol and mistreated Virginia. DSS (Mr. White) questioned the suitability of her living with the Atkins and confronted them. Patricia White testified that it was a bad situation at the Atkins.

On October 26, 2006, Virginia "ran away" to a Food Lion grocery store and called her father to come get her. He took her into his custody. He lived in Surry County but drove her back and forth to school in Goochland County, a considerable distance. Virginia told DSS (Mr. White) that she wanted to live with her father.

On November 12, 2006, DSS met with Mr. Baxter at his home in Surry and discussed a transfer of custody to him. Mr. Baxter did not mention relocating his home.

On November 17, 2006, after a hearing in the JDR Court, temporary custody was awarded to Mr. Baxter. (PX 2.) Mr. Baxter told DSS and others that he would enroll Virginia in school in Surry. Certain conditions were set in the Order, including the continuation of therapy for Virginia with Patricia White. The Order provided that "father shall bring Virginia to all sessions. Father to begin search for successor mental health counselor for services to begin on 12/19/06, for Virginia." The Order also provided that Virginia have no visitation with Mr. Atkins unless it was approved by either Mr. Baxter or the Court, at least in part because of his alcohol abuse. The Order did not specify a school system. The Foster Care Service Plan dated February 16, 2007, is in error. It states that the Order entered November 17, 2006, required Virginia to enroll in school in Surry County. This was an oral directive from the social worker but it was not in the Order. It did not prohibit out of state travel. It did require that father "cooperate fully" with a referral from Henrico DSS to "the County of father's residence" for social services. The Order set a hearing for the custody matter on January 30, 2007.

Virginia had appointments set with Patricia White for November 20, December 12, and December 19. On November 20, Mr. Baxter and Virginia were still in Virginia but he neglected to take her to the appointment. In the next day or two father and daughter drove to Florida and visited Mr. Baxter's family over Thanksgiving. They then drove to Alabama and Mississippi, where they stayed with family friends, the Brooks. Virginia did not attend school in December. Sometime in this period, Mr. Baxter decided to relocate to Mississippi and they came home and packed belongings in mid-December. At his daughter's request, Mr. Baxter picked up Virginia's horse, "Lightning," and drove the horse back to Mississippi. Virginia testified that she liked Mississippi and in December she wanted to move there with her father.

On December 13, 2006, Ms. Sharon England, the Guardian ad litem filed a petition for emergency removal pursuant to Va. Code § 16.1-251 in the Henrico JDR Court.

On December 18, 2006, in Mississippi, the Brooks filed the affidavit of residency needed for Virginia to enroll in school there. (DX 4.)

On December 19, 2006, the JDR Court entered an Order appointing Ms. England Guardian ad litem for Virginia. On Ms. England's application, the Court also entered an emergency removal Order pursuant to Va. Code § 16.1-251. Also present at the hearing were Virginia's mother, the Atkins, counsel for each parent, CASA, DSS and counsel for DSS. Temporary custody of Virginia was placed with DSS.

On December 21, 2006, Virginia met with a new therapist in Mississippi. (DX 1, 2.)

On December 27, 2006, the JDR Court entered a preliminary removal Order granting custody to DSS, pursuant to Va. Code § 16.1-252. This was without Mr. Baxter's or Virginia's appearance. It is unclear why no continuance was ordered until Mr. Baxter could appear, pursuant to Va. Code § 16.1-252(B). The JDR Court set a date for an adjudicatory hearing on the allegation of abuse or neglect, on January 30, 2007. DSS (Mr. White) told Mr. Baxter about this Order, but Mr. Baxter would not return with Virginia. He advised that they would stay in Mississippi.

On January 4, 2007, Virginia was removed by law enforcement authorities from the school she attended in Mississippi, on the first day of her attendance, and returned to Henrico County. She was placed in an emergency shelter and then foster care. Also on January 4, Mr. Baxter filed a petition with the JDR Court to have custody returned to him. His request for an immediate hearing was denied.

On January 5, 2007, Mr. Baxter filed another motion seeking an emergency hearing. It was denied.

On January 30, 2007, the JDR Court held its adjudicatory hearing on abuse or neglect under Va. Code § 16.1-241(A)(2a). Mr. Baxter and Virginia appeared in person, and Mr. Baxter had counsel. The JDR Court found Virginia abused or neglected under § 16.1-228, and set a dispositional hearing under § 16.1-278.2 for March 16, 2007. The Order also required a foster care plan, gave supervised visitation to Mr. Baxter, and reasonable and liberal visitation to the Atkins ("so long as he [Mr. Atkins] does not use any alcohol 24 hours before or during visitation").

Also on January 30, 2007, the JDR Court entered an Order dismissing Mr. Baxter's petition for custody. The Order stated, "Motion to amend custody is dismissed. Issues will be addressed in DSS Case JJ067713-02-00."

However, there is no specific ruling in the Order dated January 30, 2007, in Case No. J-67713 (the abuse and neglect case) denying the father's motion for custody. There is a related item in the Order, a requirement that DSS study the Brooks' home in Mississippi. But I did not have any evidence that this occurred. I assume that Mr. Baxter presented his case for custody on January 30, 2007, at the same time as the Petitioner's case was heard.

On March 16, 2007, the JDR Court conducted a hearing and entered its dispositional Order on the abuse and neglect case. Custody was transferred to DSS. A foster care plan was approved. Va. Code § 16.1-281. The foster care plan has concurrent goals of return to home and relative placement. Mr. Baxter filed his notice of appeal the same day. He appealed the finding of abuse and neglect, and he appealed the foster care plan.

Since January 4, 2007, when Virginia returned to this jurisdiction, Virginia has had numerous, extensive visits with the Atkins. She spends most weekends at a campground with them. There is considerable alcohol consumption by guests of the campground. More than one witness testified that Mr. Atkins still drinks alcohol. Virginia has not visited with her father. His failure to meet conditions set by DSS prevented visits. Further, Virginia has not wanted to visit him.

Virginia Baxter is a very articulate, attractive, and intelligent teenager. She is performing well in school and has the potential to excel. She suffers from the effects of family instability. (PX 1.) Mr. Baxter also is intelligent, but has difficulty expressing himself in a reasonable manner. His frustration with the legal system is evident and from time to time manifests in a combative and disagreeable attitude. However, he does not have any mental illness and I accept the testimony of Dr. Angellelli in this respect. His pastor from Surry and another witness testified as to how well he cared for Virginia before 2005.

In November and December 2006, while Virginia and her father were traveling, they had no real plans at first. Virginia learned that her father had financial problems and no stable housing. At one point Virginia contacted her mother for money because she felt that they needed it. Mr. Baxter told Virginia not to reveal her whereabouts. Mr. Baxter also interfered with Virginia's contact with her Court Appointed Special Advocate, Mr. Lawrence.

There is a dispute in the testimony by Mr. Baxter and Virginia about whether Mr. Baxter used marijuana during this time and whether he gave marijuana to Virginia. No other witnesses would know. I cannot find a preponderance of evidence to resolve this dispute. Virginia appeared credible for the most part. However, she testified that she does not use alcohol, another drug, while other witnesses (mental health professionals) testified that she did

use alcohol. Her use of alcohol was self-reported to Dr. Angster in 2007, so Virginia told him something different from what she told me. Thus, I cannot give the evidence about marijuana use much weight at all.

Virginia testified that, last December, she wanted to move to Mississippi with her father. It is undisputed that she "ran away" from the Atkins' home. Now, she does not want to live with her father. She wants to live with the Atkins again. This does not carry a great deal of weight, not only because of the demonstrated ambivalence, but also the testimony that Virginia has had problems getting along with both adults and peer groups.

When Virginia returned from Mississippi and went to the shelter she "stabilized" quickly, according to Dr. Angster. She quickly caught up her schoolwork and stayed at grade level. She suffered no physical injury with her father. She testified that she is not afraid of her father hurting her physically.

The Petitioner has to prove by a preponderance of the evidence that Virginia was abused or neglected. This does not require proof of actual harm or impairment. *Jenkins v. Winchester Dep't of Soc. Serv's*, 12 Va. App. 1178, 1183 (1991). A child need not "suffer an actual injury from the behavior of his or her parent before receiving the Commonwealth's protection." *Jackson v. W.*, 14 Va. App. 391, 402 (1992).

There are two similar statutes that define an "abused or neglected child." One is the definitions section in the general provisions for the Juvenile and Domestic Relations District Court, Va. Code § 16.1-228; the other is the definitions section in the general provisions relating to social services, Va. Code § 63.2-100. The relevant portions of Va. Code § 16.1-228 provide:

> "*Abused or neglected child*" means any child less than eighteen years of age:
> 1. Whose parents or other person responsible for his care creates or inflicts, threatens to create or inflict, or allows to be created or inflicted upon such child a physical or mental injury by other than accidental means, or creates a substantial risk of death, disfigurement, or impairment of bodily or mental functions, including, but not limited to, a child who is with his parent or other person responsible for his care either (i) during the manufacture or attempted manufacture of a Schedule I or II controlled substance, or (ii) during the unlawful sale of such substance by that child's parents or other person responsible for his care, where such manufacture, or attempted manufacture or unlawful sale would constitute a felony violation of § 18.2-248;

2. Whose parents or other person responsible for his care neglects or refuses to provide care necessary for his health. . . . Nothing in this subdivision shall be construed to limit the provisions of § 16.1-278.4. . . .

The JDR Court's Order, finding abuse or neglect, refers to the second paragraph of the definition.

The law presumes that fit parents act in their children's best interests. *Roberts v. Roberts*, 41 Va. App. 513 (2003) (Felton, J., concurring in part); see also *Griffin v. Griffin*, 41 Va. App. 77 (2003).

> Parents have a fundamental right to determine how to raise their children, and we presume that fit parents act in their children's best interest. *Troxel v. Granville*, 530 U.S. 57, 65, 147 L. Ed. 2d 49, 120 S. Ct. 2054 (2000). The Due Process Clause protects the "fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Id.* at 66. In *Griffin v. Griffin*, 41 Va. App. 77, 581 S.E. 2d 899 (2003), this Court stated that "custody and visitation disputes between two fit parents involve one parent's fundamental right pitted against the other parent's fundamental right. The discretion afforded trial courts under the best-interest test, Code § 20-124.3, reflects a finely balanced judicial response to this parental deadlock." *Id.* at 83, 581 S.E.2d at 902.

*Roberts*, 41 Va. App. at 531. See also Va. Code § 20-124.2, which applies in the district courts and in the circuit courts, "in any case in which custody or visitation of a minor child is at issue . . . [and] in determining custody . . . [t]he court shall give due regard to the primacy of the parent-child relationship. . . ." Family unity, not displacement, is the public policy of the Commonwealth.

Abuse or neglect is a serious charge. "In today's society there is no more deplorable badge of infamy a person can wear than that of being a child abuser." *Jackson*, 14 Va. App. at 408. The parent-child relationship almost certainly suffers after a finding of abuse or neglect.

The Petitioner, Ms. England, and DSS argue that the evidence proves emotional abuse of Virginia. There are not very many published opinions that describe cases of emotional abuse. The totality of the circumstances for the individual child must be considered.

In *Jackson v. W.*, 14 Va. App. 391 (1992), the issue was emotional abuse. The sufficient evidence was testimony showing that the father forced a seven year old to take a bottle and forcefully scrubbed his penis and anus during mutual showers. The psychologist testified that the father's "caretaking practices [were] abnormal, humiliating, and psychologically harmful to the child." *Id.* at 396.

In *Beaton v. Virginia Dept. of Social Serv's*, 2000 Va. App. LEXIS 172 (2000) (unpublished), the defendant left her nine-month-old twins alone in their cribs so she could pick up her three-year-old son from pre-school. *Id.* at *2-3. Because she could not find a babysitter, the defendant told her neighbor that she was leaving to pick up her son and the children were sleeping in their cribs. *Id.* The defendant left the front door to the house locked, but did not ask her neighbor to go to the house or give her neighbor a key. *Id.* at *3. Using the definition in § 63.2-100, and its guidelines, DSS found the defendant guilty of neglect in an administrative proceeding. *Id.* The Court of Appeals held that "no reasonable mind could have concluded, by clear and convincing evidence, that the challenged acts constituted neglect under the guidelines." *Id.* at *11. The Court stated that the DSS guidelines provided "that inadequate supervision may constitute neglect." *Id.* The Court continued, "[h]owever, in order for a one-time event to be sufficient to constitute neglect, it must be `a critical or severe event that results in a threat to health or safety, such as a toddler left alone'." *Id.* (quoting the DSS Manual).

After weighing all of the material evidence I cannot find that Mr. Baxter "neglected or refused to provide care necessary" for Virginia's "health." There is more than a preponderance of evidence that Mr. Baxter used poor judgment in December 2006, in leaving the Commonwealth with no plans, in disregarding the concerns of DSS, and in taking an antagonistic position to those persons trying their best to deliver services. Poor judgment is not abusive or neglectful when the proof of harm, actual or potential, is so slight. He also failed, in the short time he had custody, to provide the kind of security and stability that his daughter needs. However, this does not meet the definition of conduct that is justification for removing a child and transferring custody to someone other than the parent. The father's three principal errors were (1) taking Virginia out of school for several weeks in December, (2) not taking her to two visits with the counselor (Ms. White),[1] and (3) physically

---

[1] He was required by the November 2006 Order to find a successor counselor by December 19th and he satisfied that requirement.

removing her, without explanation, from other family members,[2] social workers, and her special advocate.

This conduct does not amount to neglecting or refusing to provide care necessary for the child's health. It does violate the JDR Court's Order of November 17, 2006.

In the show cause proceeding (CL07-499), I find Mr. Baxter in contempt and sentence him to thirty days in jail. All of the time will be suspended for three years on the condition that he complete anger management class and cooperate with DSS.

Having found that the evidence in this Court does not support an adjudication of abuse or neglect, it follows that the foster care plan cannot stand. The plan's goal of "relative placement" instead of "return to parent" is not supported by the evidence within the meaning of §§ 16.1-278.2 and 16.1-281 and is not in Virginia's best interest. At the same time, it must be recognized that Virginia has been in foster care for seven months and her relationship with her father is very strained. DSS, Ms. England, and Mr. Baxter should have a reasonable period to respond. Accordingly, this Court's Order will not be entered for fifteen business days.

Counsel for all parties and the Guardian ad litem should confer on the Order, which should be in a form that can be appealed. If no consent Order is submitted before September 17, 2007, counsel should appear that day at nine o'clock for a hearing.

---

[2] Taking her away from the Atkins cannot be very important in weighing the probative facts, given the fact that all the professionals agreed in November that Virginia should not live with the Atkins.