COURT OF APPEALS OF VIRGINIA

Present:  Judges Felton, Kelsey and Senior Judge Willis
Argued at Richmond, Virginia


ANDREA K. GRIFFIN

                                              OPINION BY
v.   Record No. 1214-02-2             JUDGE D. ARTHUR KELSEY
                                         JUNE 17, 2003
ELBERT EDDIE GRIFFIN


           FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
                  Paul M. Peatross, Jr., Judge

         Steven L. Raynor (Christopher A. Jones; Martin &
         Raynor, P.C., on briefs), for appellant.

         Christopher J. Smith (Jones & Green, LLP, on
         brief), for appellee.


     Andrea Griffin appeals a decision of the trial court granting

her estranged husband weekly visitation with her son — a child

fathered by another man while the Griffins were separated.  On

appeal, she argues that (i) the trial court incorrectly applied

the legal standard governing visitation with a non-parent, and

(ii) under a correct application of the standard, the evidence

does not justify awarding visitation over her parental objection.

Agreeing with both contentions, we reverse the trial court's

visitation order.

                              I.

     Andrea Griffin (wife) and Elbert Griffin (husband) married in

1996 and separated in September 1997.  During the separation, wife

became sexually involved with Michael Groh.  Wife continued,

however, to have sexual relations with husband during this period of separation. In October 1997, wife learned that she was pregnant and informed husband that he was the father. In December 1997, husband was injured in an automobile accident and spent six to seven weeks in the hospital. Upon husband's discharge from the hospital, wife returned to the marital home to care for him. Husband suffered extensive injuries, leaving him with significant physical and mental impairments. During this period of recuperation, however, the couple did not reconcile or express any joint interest in saving the marriage.

Wife gave birth to a boy on June 25, 1998. Husband believed at that time, based on what wife had told him, that he was the child's father. As a result, husband treated the child as his own and participated in his early development. In September 1999, wife and her son moved in with her mother. Wife agreed to allow husband weekly visitation with the child. In December 1999, however, a court-ordered paternity test established that Michael Groh was the child's father. Upon learning the results of the paternity test, wife denied husband any further weekly visitation with her son.

In August 2000, over wife's objection, the juvenile and domestic relations district court awarded husband temporary visitation rights with the child despite the results of the paternity test. In June 2001, the JDR court expanded the visitation schedule and made its order final. The final order

-

stated that the JDR court applied the best-interests test codified in Code § 20-124.3. Wife appealed to the circuit court on the ground that, as a non-parent, husband could not obtain visitation rights over her son on a mere showing of best interests. In February 2002, the circuit court held a hearing concerning the visitation issue. The child's biological father, Michael Groh, appeared and testified that he paid child support, but did not intend to foster a relationship with the child.

Wife called Dr. Patricia Martin, a clinical psychologist, as an expert witness. Dr. Martin testified that the best interests of the child would be served by ending hubsand's visitation. Dr. Martin concluded that, given the animosity between them, wife and husband were not "able to co-parent effectively." Dr. Martin noted wife's legitimate concerns over her son's "safety" when he was with husband as well as husband's "history of drinking." In addition, Dr. Martin testified, husband's psychological tests revealed "dysfunctional personality characteristics." Husband engaged in chronic disparagement of wife in her son's presence and displayed an attitude of "revenge" stemming from a sense of betrayal by wife.

The child was "obviously aware" of the hostility between husband and wife, Dr. Martin observed. She explained that this level of antagonism, even between parents, was cause for alarm:

> One of the most significant findings in family research concerns the serious hazard posed to the psychological health and

-

develop[ment] of children by continued
exposure to high conflict between the
parents, whether in the contexts of an intact
marriage or as part of ongoing post-divorce
antagonism.

It only compounded things, Dr. Martin concluded, for such hostility to exist between a mother and a non-parent seeking to play the role of a de facto father.

Husband called Wendy Carroll, a family counselor, as an expert witness. Carroll testified that she thought it would be "very hard" on the child if visitation with husband did not continue. The child referred to husband as "Daddy," Carroll pointed out, and had obvious affection for him. Carroll also found it significant that "Mr. Griffin vehemently and consistently state[s] that he views himself as [the child's] father."

Although she did not apply any "formal criteria," Carroll concluded that under "attachment theory" the child had developed an emotional tie to husband. Severing that tie, Carroll believed, would likely cause the child to consider himself "bad" and "unlovable" and to grieve over the loss. As a result, Carroll opined, it "could be" emotionally hurtful for the child if visitation ended. All in all, Carroll concluded, it would be in the child's best interests for husband to have visitation rights.[1]

---

[1] Wife also contends that the trial court erred by admitting the testimony of Wendy Carroll because she was unqualified to address the psychological aspects of "attachment theory" and that, in any event, the topic was an improper subject for expert opinion in the first place. Our reasoning assumes, without deciding, that Carroll's testimony was admissible.

-

The trial court ruled for husband, stating that the "best interests" of the child would be served by ordering visitation over the mother's objection and that not doing so would be "detrimental" to the child. The court advised husband to read Wednesdays And Every Other Weekend, a book "which talks about non-custodial parents and what's best for the child." The court's final order required wife to make the child available for visitation by husband on Wednesday afternoons and every other weekend (from Friday night until Sunday evening). The order also provided that husband "shall not consume alcoholic beverages while the child is in his care."

Wife filed this appeal, seeking a reversal of the visitation order. Before oral argument, wife filed a motion to remand the case to the trial court alleging that on March 30, 2003, husband had been in another automobile accident — this time with her son as a passenger. Police officers arrested husband for driving under the influence and endangering the child's life. By order entered April 15, 2003, we denied wife's request for a plenary remand of the case, but nonetheless granted leave for her to seek from the trial court either a reconsideration or stay of the visitation order based upon changed circumstances. In the meantime, we ordered this appeal to go forward.

II.

As the United States Supreme Court has observed, the "liberty interest at issue in this case — the interest of parents in the care, custody, and control of their children — is perhaps the oldest of the fundamental liberty interests recognized by this Court." Troxel v. Granville, 530 U.S. 57, 65 (2000). The Due Process Clause protects the "fundamental right of parents to make decisions concerning the care, custody, and control of their children." Id. at 66. As a result, the statutory best-interests test "unconstitutionally infringes on that fundamental parental right" if it authorizes a court to "disregard and overturn any decision by a fit custodial parent concerning visitation whenever a third party affected by the decision files a visitation petition, based solely on the judge's determination of the child's best interests." Id. at 67.

Troxel expressly declined to rule that all "nonparental visitation statutes violate the Due Process Clause as a per se matter." Id. at 73. Citing Williams v. Williams, 256 Va. 19, 501 S.E.2d 417 (1998), as an example, Troxel pointed out that some state statutes have been interpreted to require a showing of actual harm as a precondition to awarding visitation to a non-parent over the objection of fit parents. Id. at 74. In Williams, the Virginia Supreme Court agreed that

-

> [f]or the constitutional requirement to be
> satisfied, before visitation can be ordered
> over the objection of the child's parents, a
> court must find an <u>actual harm to the
> child's health or welfare</u> without such
> visitation.

<u>Williams</u>, 256 Va. at 22, 501 S.E.2d at 418 (quoting <u>Williams v.
Williams</u>, 24 Va. App. 778, 784-85, 485 S.E.2d 651, 654 (1997))
(emphasis added).  Thus, when fit parents object to non-parental
visitation, a trial court should apply "the 'best interests'
standard in determining visitation <u>only</u> <u>after</u> it finds harm if
visitation is not ordered."  <u>Id.</u> (emphasis added).

Custody and visitation disputes between two fit parents
involve one parent's fundamental right pitted against the other
parent's fundamental right.  The discretion afforded trial courts
under the best-interests test, Code § 20-124.3, reflects a finely
balanced judicial response to this parental deadlock.  A very
different kind of legal contest, however, exists in a dispute
between a fit parent and a non-parent.  In this latter situation,
the best-interests test should be applied only if the trial court
first finds "an actual harm to the child's health or welfare
without such visitation."  <u>Id.</u> (quoting <u>Williams</u>, 24 Va. App. at
784-85, 485 S.E.2d at 654).

We disagree with husband that our reasoning conflicts with
<u>Dotson v. Hylton</u>, 29 Va. App. 635, 639, 513 S.E.2d 901, 903
(1999), which held:  "When only one parent objects to a
[non-parent's] visitation and the other parent requests it, the

-

trial court is not required to follow the standard enumerated in Williams."  Unlike Dotson, the "other parent" in our case (Michael Groh) did not request that visitation be awarded to husband.  Thus, the trial court was not asked to referee between one parent's request that visitation be granted to a non-parent and the other parent's objection to it.  The only contest here is between a parent and a non-parent.

We are equally unpersuaded by husband's suggestion that wife has no constitutionally protected rights as a parent because she and the child's father cannot be considered an "intact family."[2] Troxel involved an unmarried, single mother.  Nothing in Troxel implies that the legal superiority of a fit parent's rights over those of a non-parent turns on whether the parent is married, separated, divorced, or widowed.  A single mother has no less constitutional right to parent her son than a married mother. "We, therefore, reject any argument that single parents are entitled to less constitutional liberty in decisions concerning the care, custody, and control of their children."  Wickham v. Byrne, 769 N.E.2d 1, 6 (Ill. 2002).

_____

[2] In Dotson, 29 Va. App. at 638, 513 S.E.2d at 903, we distinguished the situation in that case (a divorced couple with one parent requesting visitation, the other objecting to it) from Williams, which involved a "unified family" with both parents objecting to non-parent visitation.  Dotson did not hold, as husband appears to contend, that the actual-harm standard applies only to married parents in an intact family.

-

Because it exists as a means of expressing the compelling state interests necessary to overcome the constitutional parental rights recognized in Troxel, the actual-harm standard must be understood as conceptually different from, and significantly weightier than, the best-interests test.  As we made clear in Williams, the actual-harm test cannot be satisfied by a showing that "it would be 'better,' 'desirable,' or 'beneficial' for a child" to have visitation with a non-parent.  Williams, 24 Va. App. at 784, 501 S.E.2d at 654.  "It is irrelevant, to this constitutional analysis, that it might, in many instances be 'better' or 'desirable' for a child" to have visitation with a non-parent.  Brooks v. Parkerson, 454 S.E.2d 769, 773-74 (Ga. 1995).  "For the state to delegate to the parents the authority to raise the[ir] child as the parents see fit, except when the state thinks another choice would be better, is to give the parents no authority at all."  Williams, 24 Va. App. at 784, 501 S.E.2d at 654 (citation omitted).

Absent a showing of actual harm to the child, the constitutional liberty interests of fit parents "take precedence over the 'best interests' of the child."  Id.  As a result, "a court may not impose its subjective notions of 'best interests of the child'" in derogation of parental rights protected by the Constitution.  Id.  A "vague generalization about the positive influence" of non-parent visitation cannot satisfy the actual-harm requirement.  In re Herbst, 971 P.2d 395, 396,

-

398-99 (Okla. 1998). To be sure, in this context, forced visitation "cannot be ordered absent compelling circumstances which suggest something near unfitness of custodial parents." Stacy v. Ross, 798 So. 2d 1275, 1280 (Miss. 2001).

In addition, Code § 20-124.2(B) requires a showing of "clear and convincing evidence" before visitation may be awarded to a non-parent. This erects a "more stringent standard" than a mere "preponderance of the evidence." Congdon v. Congdon, 40 Va. App. 255, 263, 578 S.E.2d 833, 837 (2003). Clear and convincing evidence involves "that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." Id. (quoting Lanning v. Va. Dept. of Transp., 37 Va. App. 701, 707, 561 S.E.2d 33, 36 (2002) (citation omitted)).

In this case, the trial court collapsed the two legal standards together — not only in the decisionmaking sequence, but in the substance of the decision as well. In effect, the trial court's reasoning treated the actual-harm requirement as simply a restatement of the best-interests test. To justify a finding of actual harm under the clear and convincing burden of proof, the evidence must establish more than the obvious observation that the child would benefit from the continuing emotional attachment with the non-parent. No doubt losing such a relationship would cause some measure of sadness and a sense of loss which, in theory, "could be" emotionally harmful. But that is not what we meant by

-

"actual harm to the child's health or welfare." Williams, 24 Va. App. at 784-85, 485 S.E.2d at 654 (emphasis added). If it were, any non-parent who has developed an emotionally enduring relationship with another's child would satisfy the actual-harm requirement. The constitutional rights of parents cannot be so easily undermined.

The evidence in this case, at its best, goes no further than supporting the inference that the child would grieve the loss of the emotional attachment he has for his mother's estranged husband and "could be" emotionally hurt if visitation with him ended. While that might satisfy a trial court's "subjective notions of 'best interest of the child,'" Williams, 24 Va. App. at 785, 501 S.E.2d at 654, it falls far short of satisfying by clear and convincing evidence the actual-harm test. Wife's decision to discourage her young son's relationship with husband, therefore, must be judicially respected.[3]

### III.

In sum, we hold that the trial court applied an incorrect legal standard to the non-parent visitation award and that, under the correct standard, the evidence does not support a finding by clear and convincing evidence of actual harm to the child's health

---

[3] Given our holding, we need not address whether husband qualifies as a "[p]erson with a legitimate interest" under Code § 20-124.1. Cf. Kogon v. Ulerick, 12 Va. App. 595, 405 S.E.2d 441 (1991) (defining "stepparent" for purposes of being deemed a "party with a legitimate interest").

-

or welfare.  For this reason, we reverse and vacate the trial court's visitation order.[4]

Reversed and vacated.

---

[4] We also deny husband's motion for attorney's fees.