COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Athey, Callins and Frucci
Argued at Salem, Virginia


THOMAS FULLEN WILLIAMS, ET AL.

v.        Record No. 2021-23-3

MAGGIE KELLY PANTER

OPINION BY
JUDGE DOMINIQUE A. CALLINS
FEBRUARY 4, 2025

FROM THE CIRCUIT COURT OF WASHINGTON COUNTY
Frederick A. Rowlett, Judge

Catherine D. O'Brien for appellants.

Patricia E. Smith (Bradford & Smith, P.C., on brief), for appellee.

Amicus Curiae: Commonwealth of Virginia (Jason S. Miyares,
Attorney General; Erika L. Maley, Solicitor General; Graham K.
Bryant, Deputy Solicitor General; Brendan Chestnut, Deputy
Solicitor General; Michael Dingman, Assistant Solicitor General,
on brief), for appellants.

Amicus Curiae: Lori Kay Collins (Raighne C. Delaney; Bean,
Kinney & Korman, P.C., on brief), for appellants.


Thomas Fullen Williams, Tamara Prater Williams, Pamela Bates Price, and Randy Allen

Price ("Grandparents") appeal the circuit court's judgment dismissing their petitions for visitation

with the three children born of their deceased son, Thomas Andrew Williams ("Williams"), and the

minor children's surviving mother, Maggie Kelly Panter.  On appeal, Grandparents argue that the

circuit court erred in (1) ruling that the recently enacted Code § 20-124.2(B2) is unconstitutional as

applied to Panter and applying an "actual harm" standard to Grandparents' visitation petitions; (2)

limiting Grandparents' introduction of evidence to the "actual harm" standard; and (3) granting

Panter's motion to strike Grandparents' evidence.  Grandparents further argue that the circuit court

erred by shifting the burden to them to prove that Code § 20-124.2(B2) is constitutional and denying their request for appointment of a guardian ad litem and independent evaluation for the children.

This Court holds that the circuit court did not err in concluding that Code § 20-124.2(B2) is unconstitutional as applied to the facts of this case. The statute fails to safeguard Panter's fundamental liberty interests by disregarding the primacy of Panter's relationship with her minor children. Further, it is based on the faulty premise that Williams's fundamental liberty interests in the care, custody, and control of his minor children survive him posthumously. As for the circuit court's limiting Grandparents' introduction of evidence and granting of Panter's motion to strike their evidence, we find that Grandparents have waived these issues on appeal. We otherwise hold that the circuit court did not err by declining to appoint a guardian ad litem, or by purportedly shifting the burden from Panter to Grandparents regarding the constitutionality of Code § 20-124.2(B2). Therefore, we affirm the judgment of the circuit court.

BACKGROUND[1]

Panter is the widow of Williams, to whom she was married before he took his own life in her presence in 2017. Together they are the biological parents of the three minor children at issue in this appeal: K.W.,[2] E.W., and A.W. Prior to Williams's death, Grandparents[3] had an extensive relationship with the children, including family pool parties, holiday get-togethers, and

---

[1] The record in this case was sealed, but this appeal necessitates unsealing relevant portions of the record to resolve the issues Grandparents raise. Accordingly, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017). Additionally, we use initials, rather than names, to protect the privacy of the minors mentioned in this opinion.

[2] Since the institution of these proceedings, K.W. has attained the age of majority.

[3] Thomas Fullen Williams is the biological grandfather of the minor children, and Tamara Prater Williams is their step-grandmother. Pamela Bates Price is the biological grandmother of the minor children, and Randy Allen Price is their step-grandfather.

regular communication and visits. Following Williams's death, Panter initially continued

visitation between the children and Grandparents. After Panter's determination that the children

were exposed to inappropriate text messages and a general lack of respect for her role as their

mother while in contact with Grandparents, Panter limited the contact with them. Panter

eventually stopped all contact between the children and Grandparents.

Grandparents filed petitions in the Washington County Juvenile & Domestic Relations

District Court (the "J&DR court") in September 2017 requesting visitation with the children. In

November 2018, the J&DR court dismissed the petitions, and Grandparents appealed to the

Washington County Circuit Court. In January 2019, Grandparents filed a motion to appoint a

guardian ad litem ("GAL") for the children and to order independent evaluations of the children

by a psychologist hired by Grandparents. Panter objected to the motion. The parties submitted

written memoranda on the motion, and a hearing was held in March 2019, before Judge Randall

Lowe. The circuit court issued a letter opinion in April 2019, followed by an order in October

2019 denying Grandparents' motion. In denying the motion, the circuit court ruled that the

"actual harm" standard[4] for court-ordered visitation governed Grandparents' petitions and found

that "[t]here has been no showing of harm to the children" if Grandparents were denied

visitation.

While Grandparents' appeal was pending in the circuit court, the General Assembly

enacted Code § 20-124.2(B2), effective July 1, 2021. 2021 Va. Acts Spec. Sess. I ch. 253. Code

§ 20-124.2(B2) provides, in pertinent part, that:

> In any case or proceeding in which a grandparent has petitioned
> the court for visitation with a minor grandchild, and a natural or
> adoptive parent of the minor grandchild is deceased or
> incapacitated, the grandparent who is related to such deceased or
> incapacitated parent shall be permitted to introduce evidence of
> such parent's consent to visitation with the grandparent, in

---

[4] *See Williams v. Williams*, 256 Va. 19 (1998).

accordance with the rules of evidence. If the parent's consent is proven by a preponderance of the evidence, the court may then determine if grandparent visitation is in the best interest of the minor grandchild.

More than a year later, Grandparents renewed their motion for appointment of a GAL before Judge Frederick Rowlett, who was the newly-presiding judge over the case. A hearing on the motion was held later that same month. During the hearing, Panter argued that, by removing the "actual harm" requirement for court-ordered grandparent visitation, Code § 20-124.2(B2) violated her fundamental constitutional right to direct the care and custody of her children. The circuit court did not rule on Panter's constitutional argument at that time and denied Grandparents' renewed motion for appointment of a GAL, finding that Grandparents did not demonstrate that a GAL was needed to aid the court in deciding their appeal.

In June 2023, Panter filed an Amended Notice of Constitutional Challenge under Rule 3:14A alleging that Code § 20-124.2(B2) was unconstitutional. Soon thereafter, the circuit court held an evidentiary hearing on Grandparents' appeal. During the hearing, the circuit court ruled that it was using the "actual harm" standard to decide Grandparents' petitions rather than the standard set forth in Code § 20-124.2(B2) because the statute was unconstitutional as applied to Panter. In accordance with its ruling, the circuit court prohibited Grandparents from introducing evidence of Williams's consent to their visitation under Code § 20-124.2(B2) and limited Grandparents to presenting evidence of actual harm to the children. Grandparents did not present any new evidence of actual harm. At the conclusion of the hearing, the circuit court granted Grandparents' request to brief the issue of the constitutionality of Code § 20-124.2(B2) and directed Panter to file a written motion to strike.

Three months later, the circuit court issued a letter opinion granting Panter's motion to strike and dismissing Grandparents' petitions on the grounds that Code § 20-124.2(B2) was unconstitutional as applied to Panter. Citing *Williams v. Williams*, 256 Va. 19 (1998), *Troxel v.*

- 4 -

*Granville*, 530 U.S. 57 (2000), *Dotson v. Hylton*, 29 Va. App. 635 (1999), and *Griffin v. Griffin*, 41 Va. App. 77 (2003), the circuit court ruled that Panter, as the fit and surviving parent of the children, was vested solely with the fundamental liberty interest in raising her children and that Code § 20-124.2(B2) unconstitutionally infringed upon that interest by permitting court-ordered grandparent visitation without any predicate showing of actual harm to the children if such visitation were denied. In reaching its ruling, the circuit court concluded that "[t]he shared fundamental liberty interest of mother and father in the care, custody, and control of their children . . . ended with father's death, leaving mother in possession of it." The circuit court entered a final order memorializing its ruling on October 24, 2023. This appeal followed.

ANALYSIS

I. Constitutionality of Code § 20-124.2(B2)

Panter argues that Code § 20-124.2(B2) is unconstitutional as applied to her since it permits Grandparents to invoke the liberty interests of Williams, subverting her own liberty interests in the process. Grandparents argue[5] that the statute does not violate the Fourteenth Amendment since, in their view, it is narrowly tailored and "requires a condition precedent to the best interest determination and can only be relied upon by a small subset of people." They further contend that a parent's fundamental liberty interest in directing the custody, control, and

---

[5] The Commonwealth—through the Office of the Attorney General—filed a brief as amicus curiae in this matter, supporting the Grandparents' positions regarding the constitutional issues. The Commonwealth reiterates many of Grandparents' arguments by emphasizing the contention that Code § 20-124.2(B2) is narrowly tailored to address a compelling state interest, that Williams's fundamental liberty interests survive him posthumously, and that *Williams v. Williams*, 24 Va. App. 778 (1997) and its progeny do not apply to the present case. Additionally, the Commonwealth argues that should this Court determine that Code § 20-124.2(B2) is unconstitutional as applied to the present case, this Court should "clarify that any such holding does not extend to incapacitated parents." Because the Court today makes no determination about the facial constitutionality of Code § 20-124.2(B2), and the facts of the present case do not deal with incapacitated parents, we need not address the Commonwealth's argument on this latter point.

care of their children survives posthumously. Because we hold that the statute unconstitutionally infringes on Panter's fundamental liberty interests by failing to uphold the primacy of her relationship with the minor children, we disagree with Grandparents.

"Arguments challenging the constitutionality of a statute or regulation are questions of law that this Court reviews de novo on appeal." *Digiacinto v. Rector & Visitors of George Mason Univ.*, 281 Va. 127, 133 (2011). "[W]hen, as here, the constitutionality of a statute is challenged, our determination of legislative intent is guided by the recognition that 'all actions of the General Assembly are presumed to be constitutional.'" *Va. Soc'y for Human Life v. Caldwell*, 256 Va. 151, 156-57 (1998) (quoting *Hess v. Snyder Hunt Corp.*, 240 Va. 49, 52 (1990)). Even so, this Court may determine that an act of the General Assembly is unconstitutional where "it is clearly and plainly so." *Johnson v. Commonwealth*, 40 Va. App. 605, 612 (2003).

"Because our jurisprudence favors upholding the constitutionality of properly enacted laws, we have recognized that it is possible for a statute or ordinance to be facially valid, and yet unconstitutional as applied in a particular case." *Volkswagen of Am., Inc. v. Smit*, 279 Va. 327, 336 (2010). "The 'usual judicial practice' is to address an as-applied challenge before a facial challenge because it generally will be more 'efficien[t],' because this sequencing decreases the odds that facial attacks will be addressed 'unnecessarily' and because this approach avoids encouraging 'gratuitous wholesale attacks upon state and federal laws.'" *Id.* (alteration in original) (quoting *Connection Distrib. Co. v. Holder*, 557 F.3d 321, 327-28 (6th Cir. 2009)). "[A] court should not declare a statute to be wholly unconstitutional 'unless such a determination is absolutely necessary to decide the merits of the case.'" *Id.* at 337 (quoting *Volkswagen of Am., Inc. v. Smit*, 266 Va. 444, 454 (2003)). Thus, Virginia courts "prefer . . . to enjoin only the unconstitutional applications of the statute while leaving other applications in force . . . or to

sever its problematic portions while leaving the remainder intact." *Toghill v. Commonwealth*, 289 Va. 220, 232 (2015) (second alteration in original) (quoting *Ayotte v. Planned Parenthood*, 546 U.S. 320, 328 (2006)). Given that the circuit court below only determined that Code § 20-124.2(B2) is unconstitutional as applied to the facts of this case, we determine that evaluating the facial constitutionality of Code § 20-124.2(B2) is not absolutely necessary to decide the merits of this case. *See Agnew v. United Leasing Corp.*, 80 Va. App. 612, 623 n.5 (2024) ("[A]n appellate court's review of the case is limited to the record on appeal." (alteration in original) (quoting *Wilkins v. Commonwealth*, 64 Va. App. 711, 717 (2015))).

### A. *Jurisprudential Background*

Whether Code § 20-124.2(B2) is unconstitutional as applied to Panter turns on the application of Fourteenth Amendment jurisprudence to the statute. The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The United States Supreme Court has "long recognized that the Amendment's Due Process Clause . . . 'guarantees more than fair process,'" including "a substantive component that 'provides heightened protection against government interference with certain fundamental rights and liberty interests.'" *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (O'Connor, J.) (plurality opinion) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997)). The interest of parents in the care, custody, and control of their children "is perhaps the oldest of the fundamental liberty interests recognized" by the United States Supreme Court. *Id.* To this end, the Commonwealth has explicitly codified this liberty interest in Code § 1-240.1, providing that "[a] parent has a fundamental right to make decisions concerning the upbringing, education, and care of the parent's child."

"It is cardinal with us that the custody, care and nurture of the child reside first in the *parents*, whose primary function and freedom include preparation for obligations the state can

neither supply nor hinder." *Troxel*, 530 U.S. at 65-66 (emphasis added) (quoting *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944)). Thus, the United States Supreme Court has instructed that courts are to *presume* that a fit parent will act in the best interests of his or her child. *Id.* at 68 ("[T]here is a presumption that fit parents act in the best interests of their children."); *see also Parham v. J.R.*, 442 U.S. 584, 602 (1979) ("[H]istorically [the law] has recognized that natural bonds of affection lead parents to act in the best interests of their children." (citing 1 W. Blackstone, *Commentaries* *447; 2 J. Kent, *Commentaries on American Law* *190)).

"When . . . a statute affects a fundamental right . . . its constitutionality will be judged by the 'strict scrutiny' test." *Lively v. Smith*, 72 Va. App. 429, 441 (2020) (second alteration in original) (quoting *Hess*, 240 Va. at 53). Strict scrutiny is the highest standard of constitutional scrutiny and requires that "[a]ny statute that seeks to interfere" with fundamental rights must be "narrowly tailored to serve a compelling state interest." *L.F. v. Breit*, 285 Va. 163, 182 (2013). To this end, this Court has previously recognized that "the state has a compelling interest in '[preserving] stability in a family relationship, particularly when a young minor is involved.'" *F.E. v. G.F.M.*, 35 Va. App. 648, 664 (2001) (alteration in original) (quoting *McKinney v. Ivey*, 698 S.W.2d 506, 507 (Ark. 1985)) (holding application of six-month statute of limitation in contested adoption was not narrowly tailored to preserve objecting father's fundamental right to continue pre-existing relationship with his biological child). Likewise, "[t]he [United States] Supreme Court has clearly established that to constitute a compelling interest, state interference with a parent's right to raise his or her child must be for the purpose of protecting the child's health or welfare." *Williams v. Williams*, 24 Va. App. 778, 783 (1997) (collecting cases).

In *Williams*, our Court held that Virginia's general visitation statute, Code § 20-124.2(B),[6] does not unconstitutionally infringe upon parents' fundamental right under the Fourteenth Amendment to raise their children because

> the language of Code § 20-124.2(B) that "the court shall give due regard to the primacy of the parent-child relationship" requires proof that harm or detriment to the welfare of the child would result without visitation, before visitation may be ordered over the united opposition of the child's parents.

*Id.* at 780. In other words, "[f]or the constitutional requirement to be satisfied, before visitation can be ordered over the objection of the child's parents, a court must find an actual harm to the child's health or welfare without such visitation," and "[t]he 'best interests' [of the child] standard is considered in determining visitation only *after* a finding of harm if visitation is not ordered." *Id.* at 784-85. "Without a finding of harm to the child, a court may not impose its subjective notions of 'best interests of the child' over the united objection of the child's parents without violating the constitutional rights of those parents." *Id.* at 785.[7]

---

[6] Code § 20-124.2(B) provides:

> In determining custody, the court shall give primary consideration to the best interests of the child. The court shall consider and may award joint legal, joint physical, or sole custody, and there shall be no presumption in favor of any form of custody. The court shall assure minor children of frequent and continuing contact with both parents, when appropriate, and encourage parents to share in the responsibilities of rearing their children. As between the parents, there shall be no presumption or inference of law in favor of either. The court shall give due regard to the primacy of the parent-child relationship but may upon a showing by clear and convincing evidence that the best interest of the child would be served thereby award custody or visitation to any other person with a legitimate interest.

[7] This Court's ruling was affirmed by the Supreme Court of Virginia, with the modification that the case not be remanded to the circuit court for an actual harm determination because there was no allegation or proof that denial of grandparent visitation would be harmful to the child's welfare. *Williams*, 256 Va. at 22.

In *Dotson v. Hylton*, 29 Va. App. 635 (1999), this Court applied *Williams* and held that a trial court was not required to make an actual harm determination before awarding visitation to a grandmother under Code § 20-124.2(B).  *Id.* at 638-40.  Unlike the parents in *Williams* who were united in their objection to grandparent visitation, only one of the parents in *Dotson* was opposed to the grandmother's visitation, while the other parent requested it.  *Id.*  This Court concluded that "[t]his case is not controlled by *Williams*" because "[i]n *Williams*, both parents objected to visitation by the grandparents, and the family was intact."  *Id.* at 638.  "When only one parent objects to a grandparent's visitation and the other parent requests it, the trial court is not required to follow the standard enumerated in *Williams*."  *Id.* at 639.  Thus, in *Dotson*, the *Williams* standard did not apply since the trial court could afford primacy to the parent-child relationship through the consent of one of the parents, even in the face of opposition from the other parent. *Id.*  Therefore, the circuit court in *Dotson* "properly distinguished the *Williams* case."  *Id.*

One year later, in *Troxel*, the Supreme Court issued a seminal opinion vis-à-vis nonparent visitation rights and a Washington state custody statute.  There, the Washington statute provided, in pertinent part, that "*any person* may petition the court for visitation rights *at any time*," and that the court may grant visitation rights whenever "visitation may serve *the best interest of the child*."  *Troxel*, 530 U.S. at 67.  The Supreme Court observed that the statute was "breathtakingly broad" insofar as it "effectively permit[ted] any third party seeking visitation to subject any decision by a parent concerning visitation of the parent's children to state-court review."  *Id.*  Worse, the Supreme Court noted that upon the filing of a petition for visitation rights, the decision of the parent was not given any presumption of validity or any weight.  *Id.*  "[I]n practical effect, in the State of Washington a court can disregard and overturn *any* decision by a fit custodial parent concerning visitation whenever a third party affected by the decision files a visitation petition, based solely on the judge's determination of the child's best interests."  *Id.*

- 10 -

Based on a review of the fundamental liberty interests a parent has in the custody, care, and control of their children, the Supreme Court determined that

> so long as a parent adequately cares for his or her children (*i.e.*, is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children.

*Id.* at 68-69. Given that the Washington court failed to give "any material weight" to the parent's decisions to limit visitation with her children's paternal grandparents, the Supreme Court found that Washington's statute was unconstitutional as applied. *Id.* at 70-74. Nevertheless, the Supreme Court declined to decide whether nonparent visitation statutes are per se unconstitutional. *Id.* at 73 ("Because much state-court adjudication in this context occurs on a case-by-case basis, we would be hesitant to hold that specific nonparental visitation statutes violate the Due Process Clause as a *per se* matter.").

In *Griffin v. Griffin*, 41 Va. App. 77 (2003), this Court reversed a circuit court's judgment awarding a wife's estranged husband visitation to the wife's child who was fathered outside of wedlock by another man, where the wife objected to the visitation and the child's biological father did not request that visitation be awarded to the husband. *Id.* at 83-86. In reaching its holding, this Court observed that "[c]ustody and visitation disputes between two fit parents involve one parent's fundamental right pitted against the other parent's fundamental right" and that "[t]he discretion afforded trial courts under the best-interests test . . . reflects a finely balanced judicial response to this parental deadlock." *Id.* at 83. On the other hand, "a dispute between a fit parent and a non-parent" reflects a "very different kind of legal contest" where "the best-interests test should be applied only if the trial court first finds 'an actual harm to the child's health or welfare without such visitation.'" *Id.* (quoting *Williams*, 256 Va. at 22). The Court distinguished the circumstances of *Griffin* from *Dotson* because, unlike in *Dotson*, "[t]he only

contest here [was] between a parent and a non-parent." *Id.* at 84.  Invoking *Troxel*, this Court also emphasized that "[a] single mother has no less constitutional right to parent her son than a married mother" and that "nothing in *Troxel* implies that the legal superiority of a fit parent's rights over those of a non-parent turns on whether the parent is married, separated, divorced, or widowed." *Id.*

### B.  *Strict Scrutiny*

Code § 20-124.2(B) remained without significant change for almost two decades after *Williams*.  *See* 2017 Va. Acts ch. 46 (amending Code § 20-124.2 to add subsection B1 regarding the use of the phrase "parenting time" in lieu of "visitation"); *see also* 2018 Va. Acts ch. 857 (amending Code § 20-124.2(B) to include the requirement that a court "consider and may award joint legal, joint physical, or sole custody, and there shall be no presumption in favor of any form of custody").  Code § 20-124.2(B2) is the General Assembly's first foray into nonparent visitation legislation since the pronouncement of *Williams*, and to date, there is no controlling precedent interpreting its provisions, or constitutionality.[8]

As a threshold matter, this Court must "ascertain and give effect to" the General Assembly's legislative intent "as expressed by the language used in" Code § 20-124.2(B2).  *Berry v. Bd. of Supervisors*, 302 Va. 114, 127 (2023) (quoting *Cuccinelli v. Rector & Visitors of the Univ. of Va.*, 283 Va. 420, 425 (2012)).  In so interpreting Code § 20-124.2(B2), its words "are to be construed according to their ordinary meaning, given the context in which they are used." *Id.* at 128 (quoting *City of Va. Beach v. Bd. of Supervisors*, 246 Va. 233, 236 (1993)).

---

[8] *See, e.g.*, *Martin v. Martin*, No. 0013-22-3, slip op. at 9-14 (Va. Ct. App. Dec. 20, 2022) (declining to consider constitutionality of Code § 20-124.2(B2) where reversal on grounds that the circuit court failed to consider the best interests of the minor children was appropriate); *Williams v. Panter*, 112 Va. Cir. 138 (Washington 2023) (concluding that Code § 20-124.2(B2) was unconstitutional as applied to the facts of the present case); *In re Minor Child*, No. CJ-22-20, slip op. at 2-3 (Culpeper Cir. Ct. Feb. 18, 2023) (presuming Code § 20-124.2(B2) is constitutional).

The language of Code § 20-124.2(B2) is clear and unambiguous. By its plain text, grandparents related to a deceased or incapacitated parent have the opportunity to streamline visitation proceedings, provided that they can prove by a preponderance of the evidence the deceased's consent to the grandparent's visitation with the minor children at issue. If they succeed in proving the deceased's consent, the petitioning grandparents then need only demonstrate that such visitation would be in the best interests of the minor children.

Nonetheless, Code § 20-124.2(B2) appears to invoke and codify a species of the exception to the *Williams* actual harm standard announced in *Dotson*. The *Dotson* exception permitted nonparents petitioning for visitation to avoid the requirements of *Williams* where one of two fit, living parents consented to the visitation. But, here, Code § 20-124.2(B2) creates a fictional dispute between Panter and Williams, provided that Grandparents can prove the consent of Williams by a mere preponderance of the evidence. Once proven, the *Dotson* exception ostensibly becomes operative, and the court need only consider the best interests of the minor children, rather than whether they would suffer actual harm as a result of denying Grandparents' petitions for visitation. Put differently, Code § 20-124.2(B2) creates a framework through which Grandparents may petition a court for visitation rights and alter the burden of proof ordinarily applicable in visitation proceedings brought by a nonparent over the objection of a living parent.

Subsection B2 contains some of the same deficiencies that rendered the statute in *Troxel* unconstitutional as applied, and lacks the safeguards that salvaged the subsection in *Williams*. While Code § 20-124.2(B2) is narrow in scope[9]—insofar as it only permits an alteration of the

---

[9] For clarity, whether a statute's *scope* is narrow is wholly distinct from whether it is "narrowly tailored to serve a compelling state interest." These concepts involve separate inquiries altogether. *Compare Montgomery v. Commonwealth*, 75 Va. App. 182, 196 (2022) ("The point is that the scope of the application of any statute is framed by the specific words chosen by the legislature, subject only to constitutional limitations which no one is suggesting are implicated here.") (declining to apply retroactively a broad expansion of the exclusionary rule on a motion to suppress), *with Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 609-10

burden of proof for grandparents related to a deceased or incapacitated parent—it fails to prioritize the primacy of Panter's fundamental liberty interests. Just as with the statute at issue in *Troxel*, Code § 20-124.2(B2) "accord[s] no deference" to the wishes of Panter concerning visitation by Grandparents. 530 U.S. at 67. In effect, Code § 20-124.2(B2) permits a court to "disregard and overturn *any* decision by" Panter, "a fit custodial parent," concerning visitation by Grandparents so long as they show by a mere preponderance of the evidence that Williams consented to Grandparents' exercising visitation. *Id.* Code § 20-124.2(B2)'s lack of an emphasis on the primacy of Panter's parental relationship—the critical factor present in Code § 20-124.2(B) and relied upon by our Court in *Williams* in adopting the actual harm standard— renders this statute constitutionally suspect as applied to her. *Williams*, 24 Va. App. at 784-85.

Even if Code § 20-124.2(B2) could be construed as serving the compelling state interest of "[preserving] stability in a family relationship,"[10] *G.F.M.*, 35 Va. App. at 664 (alteration in original), its terms are not narrowly tailored to serve that interest. By its own terms the statute creates a procedure through which Grandparents may enjoy liberty interests in the care, custody, and control of the minor children at odds with those of Panter, the only living parent in this

---

(2021) ("Even when the Court is not applying strict scrutiny, we still require a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is in proportion to the interest served, that employs not necessarily the least restrictive means but a means narrowly tailored to achieve the desired objective." (quoting *McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 218 (2014) (plurality opinion))) (holding California charitable organization disclosure law facially unconstitutional under the First Amendment). In other words, even a statute that is narrow in scope may fail to pass muster under strict scrutiny, where its narrow scope is not in proportion to the interest it purportedly serves.

[10] Notably, this Court recognized this compelling state interest in *G.F.M.* as a vehicle for protecting the rights of a father in a contested adoption proceeding where a paternal grandmother sought to time bar father's objections to the adoption. *G.F.M.*, 35 Va. App. at 664. There, we construed the "application of the six-month statute of limitation" as insufficiently narrowly tailored to overcome the father's fundamental liberty interest in maintaining a relationship with his *own* child. *Id.* at 664-65.

equation. It does so by freezing in time Williams's consent, without regard to how that consent might have changed in the time since Williams's death had Williams remained alive.[11] The fact that Williams's wishes for the minor children would have certainly oscillated, his response stochastic and based on the as-yet-to-be-determined needs of the minor children at any given time throughout the course of their lives, defeats the notion that his fundamental liberty interests could survive posthumously, as asserted by Grandparents. Parenting is a holistic exercise, and the deceased are simply incapable of articulating, prior to their death, a parenting plan that could account for the infinitesimal rearing decisions made on behalf of minor children throughout the course of their upbringings which outlive the deceased parent. It follows that merely proving, however convincingly, that Williams was in favor of visitation by Grandparents in the abstract is insufficient to overcome the clear, cognizable, present objections of Panter to such contact.

The statute imputes the loosely proven consent of Williams to Grandparents, transforming them into beneficiaries of the fundamental liberty interests of Williams. In doing so, Code § 20-124.2(B2) transgresses the basic principle that the "common law right of visitation extends only to parents." *Kogon v. Ulerick*, 12 Va. App. 595, 597 (1991) ("As between a parent who has been awarded custody of a child, on the one hand, and, on the other, third persons, *including grandparents*, the rights of the custodial parent are paramount; the parent has the

---

[11] To be sure, the facts of the present case highlight the shortcomings of Code § 20-124.2(B2) vis-à-vis its attempt to invoke the exception to the *Williams* standard announced in *Dotson*. In *Dotson*, both parents were alive and took diametrically opposed stances on whether paternal grandparents should have been granted visitation rights. *Dotson*, 29 Va. App. at 637-38. Because each parent enjoyed a fundamental liberty interest in directing the custody, care, and control of their child, the only relevant consideration was whether visitation by the paternal grandmother was in the child's best interests. *Id.* at 639 ("When only one parent objects to a grandparent's visitation and the other parent requests it, the trial court is not required to follow the standard enumerated in *Williams*."). Here, even if Williams desired for Grandparents to have visitation rights with the minor children at the time of his death, whether that consent would still exist to the present day is an ambiguity too speculative to serve as a basis to diminish Panter's fundamental liberty interests in favor of Grandparents.

- 15 -

authority to control the child and to determine with whom it visits." (emphasis added)).  Indeed, this Court has repeatedly held that any statute that would grant grandparents or any nonparent rights greater than or equal to that of a parent would run afoul of the Fourteenth Amendment.  *See, e.g.*, *Denise v. Tencer*, 46 Va. App. 372, 387 (2005) ("[W]hile parental rights have long been recognized under the common law, historically, grandparents have not enjoyed similar preferential treatment."); *Griffin*, 41 Va. App. at 84 ("Nothing in *Troxel* implies that the legal superiority of a fit parent's rights over those of a non-parent turns on whether the parent is married, separated, divorced, or widowed.").

As a result, this Court concludes that Code § 20-124.2(B2) does not pass constitutional muster as applied to the facts of the present case under strict scrutiny.

### C.  *Limiting Construction*

Having found Code § 20-124.2(B2) unconstitutional as applied to the facts of this case, Virginia jurisprudence next "requires that we 'construe the plain language of [Code § 20-124.2(B2)] to have limited application if such a construction will tailor the statute to a constitutional fit.'"  *Toghill*, 289 Va. at 233-34 (quoting *McDonald v. Commonwealth*, 274 Va. 249, 260 (2007)).  In doing so, we must consider whether a limiting construction of the statute could salvage its constitutionality without "rewriting state law to conform it to constitutional requirements."  *Id.* at 233 (quoting *Ayotte*, 546 U.S. at 329).  Neither Panter, Grandparents nor the amici curiae offer a proposed limiting construction on appeal.  At best, Panter, Grandparents and the amici curiae advance competing arguments about whether Williams's fundamental liberty interests survive him posthumously such that he could consent to custody and visitation arrangements prior to or at the time of his death, and whether Code § 20-124.2(B2) is subject to the actual harm standard.  To the extent that either of these competing arguments present

- 16 -

potential limiting constructions, we conclude that neither option could feasibly salvage the constitutionality of Code § 20-124.2(B2) as applied to this case.

To the extent this first set of arguments can be understood as advocating for a limiting construction whereby Code § 20-124.2(B2) only permits the admission of testamentary documents to satisfy the threshold determination of Williams's consent, we find that such a limiting construction would not salvage the constitutionality of the statute. Grandparents assert that "[f]requently, parents include provisions in their Last Will and Testament with directions on who shall have custody of the child should the parents die." But Grandparents misunderstand the concept of the appointment of custody and guardianship of minor children in the testamentary context. While Code § 64.2-1701(A) does provide that "[e]very parent may by will appoint (i) a guardian of the person of his minor child," the statute provides that such testamentary guardians are "not entitled to custody of the person of the minor so long as either of the minor's parents is living and such parent is a fit and proper person to have custody of the minor." Indeed, even in circumstances where a parent with sole custody predeceases a noncustodial parent, custody would not merely descend to whomever the custodial parent desired; to the contrary, "[t]he prevailing rule clearly is that, upon the death of the parent who has held custody under a divorce decree, the right to custody *automatically* inures to the surviving parent." *Judd v. Van Horn*, 195 Va. 988, 994 (1954) (emphasis added) (quoting 74 A.L.R. 1353).

Grandparents would read Code § 20-124.2(B2) to permit the designation of visitation rights over minor children at the death of a parent, whether made in a testamentary document or not. In doing so, Grandparents subvert the principle that upon Williams's death, Panter has the exclusive "right to the custody and control of the child, provided [s]he is able to take care of and support it." *Id.* at 995 (quoting *Hayes v. Strauss*, 151 Va. 136, 141 (1928)). "This is not a contest between husband and wife; the [husband] is dead. Grandparents, as such, do not stand *in*

*loco parentis*.” *Id.* (quoting *Sutton v. Menges*, 186 Va. 805, 809 (1947)).  In effect, Grandparents would interpret Code § 20-124.2(B2) as permitting them to stand in loco parentis—thereby enjoying fundamental liberty interests they are otherwise not entitled to—upon satisfying their burden under the statute, in direct contravention of precedent that has existed for almost a century.  Because “a statutory provision will not be held to change the common law unless the legislative intent to do so is plainly manifested,” we decline to adopt a limiting construction in line with Grandparents’ arguments on this point.  *Cherry v. Lawson Realty Corp.*, 295 Va. 369, 376 (2018) (quoting *Herndon v. St. Mary’s Hosp., Inc.*, 266 Va. 472, 476 (2003)).

As for a limiting construction that would superimpose the actual harm standard onto Code § 20-124.2(B2) as this Court did in *Williams*, we likewise find the parties’ arguments to this end unavailing.  In *Williams*, we were tasked with interpreting Code § 20-124.2(B), which expressly provides that the “court shall give due regard to the primacy of the parent-child relationship.”  Our Court relied on this language, interpreting it “to evidence the legislature’s intent that the court make the necessary finding that a denial of visitation would be harmful or detrimental to the welfare of the child.”  *Williams*, 24 Va. App. at 784.  Notably, Code § 20-124.2(B2) includes no such language requiring deference to the primacy of the parent-child relationship, and we must presume that the absence of this language in subsection B2 was an intentional choice on the part of the legislature.  *See Rolofson v. Fraser*, 81 Va. App. 508, 531 (2024) (“Virginia courts presume that the legislature chose, with care, the words it used when it enacted the relevant statute.” (quoting *Cornell v. Benedict*, 301 Va. 342, 349 (2022))).  Further, subsection B2, unlike subsection B, is devoid of any language on which this Court could read the actual harm standard as operative, negating the imposition of the standard as a limiting construction.  Indeed, omission of such language appears intentional and we will not “rewrit[e]

state law to conform it to constitutional requirements." *Toghill*, 289 Va. at 233 (quoting *Ayotte*, 546 U.S. at 329).

Granted, the fact that Code § 20-124.2(B2) cannot be read as requiring a showing of actual harm to the minor children in the absence of visitation by Grandparents is not, alone, constitutionally fatal; in *Williams* the "actual harm" standard was superimposed onto the statute as a limiting construction to salvage its constitutionality. *See* 256 Va. at 22; 24 Va. App. at 784. *Troxel* requires only that nonparent visitation statutes give a parent's choice to deny visitation by nonparents "at least some special weight," and a "presumption of validity" in order to survive strict scrutiny. 530 U.S. at 67, 70. The Supreme Court in *Williams* recognized the paramount significance of such deference to the parent's choice and found that the "actual harm" standard was sufficient to satisfy the same. 256 Va. at 22. Meanwhile, Code § 20-124.2(B2) fails to grant any deference at all to Panter's objections to Grandparents' visitation.

The only language in Code § 20-124.2(B2) upon which this Court could hinge any limiting construction is found in the statute's requirement that the circuit court make a best interests determination upon Grandparents' satisfactory proof of Williams's consent. *See* Code § 20-124.2(B2) ("If the parent's consent is proven by a preponderance of the evidence, the court may then determine if grandparent visitation is in the best interest of the minor grandchild."). By including this requirement, the General Assembly has inherently contemplated that the circuit court would consider the statutory factors codified at Code § 20-124.3. *See Berry*, 302 Va. at 128 ("When addressing multiple legislative enactments dealing with the same subject matter, we do not view them 'as isolated fragments of law, but as a whole, or as parts of a great connected, homogeneous system, or a single and complete statutory arrangement.'" (quoting *Thorsen v. Richmond Soc'y for the Prevention of Cruelty to Animals*, 292 Va. 257, 266 (2016))). The statutory factors considered in any best interests determination require that a circuit court

consider "[s]uch other factors as the court deems necessary and proper to the determination." Code § 20-124.3(10). Hence, this Court *could* read the imperative from *Troxel* that the circuit court give "at least some special weight to the [living] parent's own determination" into the catchall factor of Code § 20-124.3(10) for purposes of best interests determinations under Code § 20-124.2(B2). 530 U.S. at 70.

This interpretation, however, mangles Code § 20-124.2(B2), and would require this Court to engage in quintessentially legislative work by rewriting the statute to comply with the relevant constitutional considerations. This we will not do. *Toghill*, 289 Va. at 233 ("[T]he [United States] Supreme Court instructed that a court should not supplant the legislature by 'rewriting state law to conform it to constitutional requirements even as we strive to salvage it.'" (quoting *Ayotte*, 546 U.S. at 329)). The Virginia Supreme Court has stressed that "courts may not 'add[] language to or delet[e] language from a statute' in the guise of interpreting that statute." *Berry*, 302 Va. at 133 (alterations in original) (quoting *Appalachian Power Co. v. State Corp. Comm'n*, 284 Va. 695, 706 (2012)). While the interpretation contemplated would have the effect of rendering Code § 20-124.2(B2) constitutional, to do so would require rewriting the statute to include the words "while giving at least some special weight to the living or capacitated parent's own determination" after the words "in the best interest of the minor grandchild."

Because none of these potential limiting constructions are appropriate in this case, this Court will not attempt to divine one out of thin air. "Our ability to devise a judicial remedy that does not entail quintessentially legislative work often depends on how clearly we have already articulated the background constitutional rules at issue and how easily we can articulate the remedy." *Ayotte*, 546 U.S. at 329. Common law doctrines regarding the custodial rights of a surviving parent in the wake of the deceased's death are anathema to the notion that a parent's consent to visitation could be declared at the time of death and carry forward posthumously.

- 20 -

Similarly, the construction of Code § 20-124.2(B2) does not contemplate an extension of the actual harm standard articulated in *Williams*. Given that the principles outlining the constitutionality of nonparent visitation regimes remain unclear, this Court declines to offer an opinion on what potential limiting construction *could* salvage this statute as applied to this case.[12]

\* \* \*

Because we determine that Code § 20-124.2(B2) fails to pass constitutional muster when subjected to strict scrutiny and that a limiting construction is not appropriate at this juncture, we hold that the statute's provisions are unconstitutional as applied to the facts of this case.[13]

II. Grandparents' Remaining Arguments

Grandparents make two additional arguments in support of their position that the circuit court's judgment should be reversed. We reject each of those arguments in turn.

A. *Burden Shifting*

Grandparents first argue that the circuit court further erred by purportedly "shifting the burden" to them to prove the statute constitutional, instead of requiring Panter to prove the statute unconstitutional. We disagree.

---

[12] To be clear, our holding today does not foreclose future litigants from advancing another potential limiting construction that could permissibly salvage the constitutionality of Code § 20-124.2(B2).

[13] Framed in relation to their challenge of the circuit court's finding that Code § 20-124.2(B2) is unconstitutional as applied to the facts of this case, Grandparents further challenge the circuit court's granting of Panter's motion to strike, and its limitation of the presentation of evidence solely to the issues relevant under *Williams*. Rule 5A:20(e) requires an opening brief to contain "[t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error." "Unsupported assertions of error 'do not merit appellate consideration.'" *Bartley v. Commonwealth*, 67 Va. App. 740, 744 (2017) (quoting *Jones v. Commonwealth*, 51 Va. App. 730, 734 (2008)). Grandparents raise no arguments or principles of law on brief in support of their contentions on these points. Therefore, we treat these questions as waived and do not consider them. *See Parks v. Parks*, 52 Va. App. 663, 664 (2008).

"The party challenging an enactment has the burden of proving that the statute is unconstitutional." *Marshall v. N. Va. Transp. Auth.*, 275 Va. 419, 428 (2008). Here, Panter raised a constitutional challenge to Code § 20-124.2(B2) at the September 2022 hearing, which the circuit court later resolved in Panter's favor prior to the June 2023 hearing. The circuit court only then considered additional arguments from the Grandparents in favor of the law's constitutionality at the *request* of Grandparents. Put differently, the circuit court considered the arguments made orally, determined that Panter carried her burden in proving Code § 20-124.2(B2) unconstitutional, and nonetheless granted Grandparents' request to brief the matter in writing, effectively as a motion to reconsider. Only when the court entered an order memorializing its granting of Grandparents' request did they object, claiming that the circuit court "shift[ed] the burden" to them to "prove the law [c]onstitutional."

"A motion to reconsider ordinarily asks a court to reconsider a holding because, in the opinion of the movant, the holding was erroneous." *Wal-Mart Stores E., LP v. State Corp. Comm'n*, 299 Va. 57, 76 (2020). "Motions to . . . reconsider a prior ruling involve matters wholly in the discretion of the trial court." *Thomas v. Commonwealth*, 62 Va. App. 104, 109 (2013). "Without valid excuse, no party who has had his day in court can reopen the hearing . . . on the mere ground that he wishes to interpose other defenses which he neglected to interpose before such decision was made." *Id.* at 109-10 (alteration in original) (quoting *Holmes v. Holmes*, 7 Va. App. 472, 482 (1988)). The party challenging the trial court's prior ruling at issue carries the burden of demonstrating some "error on the face of the record, or . . . some legal excuse for his failure to present his full defense at or before the time of entry of the decree." *Holmes*, 7 Va. App. at 480 (alteration in original) (quoting *Downing v. Huston, Darbee Co.*, 149 Va. 1, 9 (1927)).

We find Grandparents' arguments regarding burden-shifting on the constitutional question unavailing. The record reflects that the court below made its determination that Code § 20-124.2(B2) is unconstitutional as applied to Panter *prior* to Grandparents' written briefing on the issue. On brief, Grandparents challenged the circuit court's ruling in this regard. By granting Grandparents' request to brief the constitutionality of Code § 20-124.2(B2), the circuit court effectively permitted Grandparents to file a motion to reconsider challenging its prior ruling on the issue. Consequently, Grandparents carried the burden to demonstrate an error on the face of the record in the trial court's ruling, which they failed to do. The circuit court properly required Panter to carry her burden in proving Code § 20-124.2(B2) unconstitutional as an initial matter; Grandparents may not now, post hoc, argue that the circuit court erred by granting their own request to brief the matter simply because they were properly required to carry their burden on reconsideration.

B. *Failure to Appoint a GAL*[14]

Second, Grandparents argue that the circuit court erred by denying their motion for the appointment of a GAL pursuant to Code § 16.1-266(F) since they contend that the minor children's wishes could not be adequately represented by the parties to this litigation. We disagree.

Code § 16.1-266(F)[15] provides for the appointment of a guardian ad litem in visitation proceedings "in the discretion of the court." "The established practice is that a guardian *ad litem*

---

[14] Grandparents also assigned error to the circuit court's denial of their "request for an independent evaluator to evaluate the children." That being said, Grandparents "[chose] not to pursue this [a]ssignment of [e]rror," and therefore we do not consider it.

[15] Code § 16.1-266(F) ordinarily applies to proceedings in a juvenile and domestic relations district court. Nonetheless, Code § 16.1-296(I) provides that "[i]n all cases on appeal, the circuit court in the disposition of such cases shall have all the powers and authority granted by the chapter to the juvenile and domestic relations district court." Because Grandparents'

may be appointed after a trial judge makes a preliminary finding that the best interests of the child require such appointment." *Verrochio v. Verrochio*, 16 Va. App. 314, 317 (1993). Moreover, a "trial court 'shall not' appoint a guardian *ad litem* 'unless the court finds . . . that the interests of the child or children are not otherwise adequately represented.'" *Yopp v. Hodges*, 43 Va. App. 427, 435 (2004) (alteration in original). "The courts of the Commonwealth routinely resolve custody and visitation disputes without the appointment of a guardian *ad litem*." *Id.* "[W]hen a decision is discretionary . . . . the court has a range of choice, and . . . its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." *Lawlor v. Commonwealth*, 285 Va. 187, 212-13 (2013) (second and third alterations in original) (quoting *Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011)). "An abuse of discretion occurs only when 'reasonable jurists' could not disagree as to the proper decision." *Hamad v. Hamad*, 61 Va. App. 593, 607 (2013) (quoting *Brandau v. Brandau*, 52 Va. App. 632, 641 (2008)).

Here, in denying Grandparents' renewed motion for appointment of a GAL, the circuit court concluded that Grandparents did not demonstrate that a GAL was necessary to aid the court in deciding their visitation petitions. During the September 2022 hearing on Grandparents' motion, the circuit court gave several reasons for denying their request. First, the circuit court observed that the present case was not a custody dispute nor involved any questions regarding Panter's fitness as a parent that would necessitate physically observing the children's living arrangements and determining whether the children were receiving proper care. Second, the circuit court noted the children's ages at the time of the hearing—9, 14, and 15 years old—and concluded that the court would have the ability on its own to conduct interviews with the

petitions were appealed from the J&DR court to the circuit court, the circuit court operated with the authority to appoint a GAL under Code § 16.1-266(F).

- 24 -

children without necessitating the involvement of a GAL.  Finally, the circuit court observed that it would have just as much capability as a GAL to counsel the children on being put under oath and telling the truth when testifying.  In light of these considerations, the circuit court did not abuse its discretion in declining to appoint a GAL in this case.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court is affirmed.

*Affirmed.*